UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOWERNORTH DEVELOPMENT, LLC and CHICAGO SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF GENEVA, ILLINOIS,<br><br>Defendant. | No. 22 C 4151<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tower North Development, LLC ("TowerNorth") and Chicago SMSA Limited Partnership d/b/a Verizon Wireless ("Verizon") sued the City of Geneva, Illinois ("the City"), challenging the City's denial of Plaintiffs' application to build a cellular tower on a parcel of land within the City's jurisdiction. The City moved to dismiss, and later, both parties moved for summary judgment; those motions were granted in part and denied in part in reported decisions. *See TowerNorth Dev., LLC v. City of Geneva,* No. 22 C 4151, 2023 WL 6388257 (N.D. Ill. Sept. 30, 2023); *TowerNorth Dev., LLC v. City of Geneva,* No. 22 C 4151, 2024 WL 621616 (N. D. Ill. Feb. 14, 2024). In July 2024, the court conducted an evidentiary hearing. After considering the evidence presented at that hearing and the parties' post-hearing briefs, the court found that Plaintiffs were not entitled to injunctive relief for reasons explained in a third written ruling—chiefly, a finding that Plaintiffs had not demonstrated the absence of a feasible alternative site for the cellular tower. *TowerNorth Dev., LLC v. City of Geneva,* No. 22 C 4151, 2025 WL 975753 (N.D. Ill. Mar. 31, 2025).

Since the time the court entered judgment, Plaintiffs continued their search for an alternative site, and now seek rehearing and reconsideration under FED. R. CIV. P. 59. Plaintiffs ask the court to consider the testimony of two additional fact witnesses [119]. For the reasons explained here, the court believes this new evidence, not available before entry of judgment, may

undermine its previous conclusion about the feasibility of the alternative site. Accordingly, the motion is granted, and the parties are directed to confer and advise the court, within 14 days, of a date for a proposed date for a further evidentiary hearing.

## BACKGROUND

The court assumes the parties' familiarity with the factual and procedural background of this case.[1] Below, the court briefly summarizes the facts relevant to deciding this motion.

This case is rooted in the proposed construction of a cell phone tower in Geneva, Illinois. (Order [109] at 3–4.) TowerNorth, acting on behalf of Verizon, sought to construct a tower to correct a reported coverage gap in the Geneva area. (*Id.*) Verizon's engineers determined the best location for the tower to be an area of a quarter-mile radius within Geneva, and Plaintiffs began exploring potential sites within that area. (*Id.* at 3; Summ. J. Order [46] at 3.) Eventually, after a lengthy search process, Plaintiffs determined that a site referred to as "Oscar Swan" was the best candidate. (Summ. J. Order [46] at 5.) As required by Geneva's municipal code, Plaintiffs applied for a special-use permit to construct the tower. (Order [109] at 3.)

On July 14, 2022, the City's Planning and Zoning Commission held a public hearing to consider the proposed project. (*Id.* at 4.) Several residents voiced strong opposition, asserting that the tower would be unsightly and threatened to reduce property values. (*Id.*) Following the hearing, the City did not immediately act on the application; on August 8, 2022, TowerNorth filed this action under the Telecommunications Act of 1996 ("TCA"), seeking to compel a decision on the permit. (*Id.*) Later that same day, the City Council met and unanimously rejected the permit. (*Id.* at 4.)

Following the City's denial, TowerNorth amended its lawsuit, adding Verizon as a plaintiff and alleging three additional violations of the TCA. (*See* Second Am. Compl. [11].) In total, this

---

[1] As noted, the court has entered substantial written rulings on the City's motion to dismiss [43], the parties' cross-motions for summary judgment [46], and the evidence presented at the July 19, 2024 hearing [109].

lawsuit involved four claims: (1) that the City's decision was unreasonably delayed in violation of 47 U.S.C. § 332(c)(7)(B)(ii); (2) that the denial was unsupported by evidence, as required by 47 U.S.C. § 332(c)(7)(B)(iii); (3) that the denial effectively prohibited Plaintiffs from providing personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II); and (4) that the City's zoning regulations effectively prohibited them from providing telecommunications services in violation of 47 U.S.C. § 253(a), and were thus preempted by the TCA.  (See *id.* ¶¶ 99–146.)  The court dismissed Count I on motion (*see* Mot. to Dismiss Order [43]) and granted summary judgment in favor of the City on Count II.  (*See* Summ. J. Order [46].)

On July 19, 2024, the court conducted an evidentiary hearing to determine whether Plaintiffs were entitled to injunctive relief.  Under the FCC's interpretation of the TCA, a municipal body violates the Act whenever it "materially inhibits" the establishment of wireless service. Following the hearing, the court concluded that Plaintiffs had not met their burden; the court focused on an alternative site (referred to by the parties as "Dempsey 2") that could have met Verizon's needs, but was not seriously considered or explored by Plaintiffs.  (Order [109] at 20–28.)  Assuming that the alternative site was available, the court concluded that Plaintiffs had not shown that the City's denial of the Oscar Swan permit "materially inhibited" their ability to provide wireless service.  (*Id.*)  Injunctive relief was therefore not warranted.  The court's written opinion was dated March 31, 2025, but the court delayed entering judgment until July 2, 2025, with the hope that the parties would reach a settlement agreement or find a feasible alternative to the Oscar Swan property.  [118]

Following the entry of judgment, Plaintiffs filed this motion, seeking reconsideration and an opportunity for rehearing to present new evidence as to the feasibility of Dempsey 2.  [119] The City filed a brief in opposition [121], and Plaintiffs replied [124].  The matter is now fully briefed and ready for decision.

3

**DISCUSSIO**

Plaintiffs seek to re-open the hearing to offer the testimony of two additional fact witnesses: Ray Shinkle and Elizabeth Rutkowski.

Shinkle is employed with Insight RE, Inc., a company that "assists wireless telecommunications companies and build-to-suit tower companies in site acquisition." (Shinkle Decl. [119-1] ¶ 3.) According to Plaintiffs, Shinkle would testify about his communications with Austin Dempsey, the owner of Dempsey 2, that took place after the court's March 31, 2025 Order and before the court entered judgment. Shinkle claims that he reached out to Dempsey in April 2025, to let him know that Plaintiffs were prepared to accept a proposal for lease of the Dempsey 2 parcel that Dempsey had made (and Verizon had rejected) in 2024. (*Id.* ¶ 8.) The effort was unsuccessful: Dempsey rejected the proposal. Instead of the deal he had proposed earlier, Dempsey now requested a 20% revenue sharing agreement in return for making the Dempsey 2 site available. (*Id.*) After Shinkle advised Dempsey that TowerNorth's policy does not allow for revenue sharing, however, Dempsey relented, advised Shinkle that he "could agree to terms without revenue sharing," and requested a draft lease for review. (*Id.* ¶ 9.) Shinkle prepared a draft lease and sent it to Dempsey for review on May 8, 2025. (*See id.* ¶¶ 10–15.) But then Dempsey stopped communicating. As of July 30, 2025, Shinkle had not received any comments on the lease from Dempsey or his lawyer, despite multiple outreach attempts throughout the summer. (*Id.*)

Rutkowski is an employee of TowerNorth, and is "responsible for all activities in acquiring, engineering, and constructing new sites, including overseeing site selection of cell tower, lease negotiation, zoning and construction." (Rutkowski Decl. [119-1] ¶¶ 1, 5.) If the court reopens the hearing, Rutkowski plans to testify that the total cost of the Dempsey 2 cellular tower (assuming that Dempsey agrees to a lease) would be far higher than the cost of the Oscar Swan Property. (*Id.* ¶ 14.) Plaintiffs argue that the high cost of the Dempsey 2 project would, among other things,

"strain[] Plaintiffs' resources and materially inhibit[] their ability to provide wireless service." (Mem. [119] at 12.)

Rule 59(a)(2) of the Federal Rules of Civil Procedure authorizes a court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(2). Under the rule, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation and internal quotation marks omitted). In this case, Plaintiffs do not allege a manifest error of law or fact; instead, they contend that the testimony of Rinkle and Rutkowski qualifies as "newly discovered evidence." To succeed under this theory, Plaintiffs must show that "(1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Env't Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008) (citing *Matter of Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 78 F.3d 285, 293–94 (7th Cir. 1996)); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013).

In this case, the court agrees with Plaintiffs—rehearing is warranted to consider the additional evidence. The first three prongs of the *Env't Barrier* test are easily established. On the first prong, the new testimony by Raskin and Rutkowski relates entirely to events that took place following the trial, but prior to the entry of judgment, so it certainly was "discovered post-trial." *See Env't Barrier*, 540 F.3d at 608. As to the second, the new evidence suggests that Plaintiffs immediately began exploring the Dempsey 2 site following this court's order, which establishes due diligence. (*See* Raskin Aff. [119-1] ¶ 9.) And as to the third, the evidence is neither cumulative nor impeaching—it presents new facts relevant to the court's prior determination that Dempsey 2 was available for lease, which directly call that conclusion into doubt.

5

The parties primarily dispute the fourth and fifth prongs, which are closer questions. "In the Rule 59 context, the moving party must clearly establish that the new evidence 'would probably produce a new result' in a new trial." *Cincinnati Life*, 722 F.3d at 955 (quoting *Env't Barrier*, 540 F.3d at 608: *see also Marcus & Millichap Inv. Servs. of Chi., Inc.*, 639 F.3d 301, 314 (7th Cir. 2011) (finding that, to succeed on a Rule 50 motion, a movant must show "both that the evidence was not merely cumulative or impeaching" and that it "would probably yield a different result"). On these prongs, the court also agrees with Plaintiffs—the proposed testimony undermines the court's previous conclusion that Dempsey 2 is not a feasible alternative site, making a new result probable. Much of the evidence presented at the court's hearing last year confirmed Plaintiffs' need for additional capacity and the desirability of the Oscar Swan site to meet that need. But, as the court explained:

> In this case, the evidence shows that Plaintiffs failed to apply for the Dempsey 2 site as well as the Oscar Swan site, despite the fact that Dempsey 2 was available at the same lease price as Oscar Swan and had been approved within Verizon from a technical standpoint. Even if Plaintiffs' predictions that they were more likely to receive approval for variances at Oscar Swan than Dempsey 2 was reasonable, it was the City's prerogative—not the Plaintiffs'—to rule out an otherwise technologically and economically feasible tower site by denying zoning variances. On this record, the court concludes that the City's denial of Plaintiffs' application at Oscar Swan did not materially inhibit the Plaintiffs' ability to provide wireless services in the Randall-Lincoln area.

(Order [109] at 28–29.) Indeed, the court's conclusions on the merits were *expressly premised* on the availability of Dempsey 2 which, at the time, appeared to be available as an alternative site. This new evidence suggests otherwise: that Austin Dempsey is unwilling to lease Dempsey 2 to Plaintiffs, at least at the price proposed by Plaintiffs, and has reportedly not made a counteroffer. If true, Dempsey 2 is no longer a viable site, calling the court's prior conclusion into doubt. Receiving and considering this additional evidence is necessary to ensure that the court's conclusion was based on an accurate apprehension of the facts. *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813–14 (7th Cir. 2012).

To be sure, the court was not previously unaware of the situation with Dempsey. The evidence presented at the hearing showed that Dempsey had been a thorn in Plaintiffs' side throughout the site acquisition process. (*See* Order [109] at 13–17.) Of the four primary candidate sites, three of them (BEI, Metro Storage, and Dempsey 2) required Dempsey's approval, and he appeared reluctant to give it. When Plaintiffs approached Dempsey about the BEI site, he was unresponsive; when he did respond, he demanded a price Plaintiffs deem unreasonably high.[2] And when Plaintiffs approached the owners of Metro Storage, who were interested in a deal, Dempsey executed a deed restriction to block the project, reportedly claiming that "if he couldn't have the money, nobody could." (Order [109] at 15.)

But at the time, the court did not believe that the difficult situation with Dempsey extended to Dempsey 2. Plaintiffs argued in their post-hearing briefing that they preferred Oscar Swan because it was the only candidate outside Dempsey's purview. (Pl. Br. [25] at 21.) The court was skeptical, noting that "Plaintiffs have produced no evidence that Dempsey intended to make Verizon's life difficult at the Dempsey 2 site," notwithstanding his unpleasantness regarding the BEI and Metro Storage properties. (Order [109] at 27 n.14.) In fact, the evidence at the time suggested that Dempsey was indeed interested in a deal, as he "quickly responded to [a] letter about building at Dempsey 2, and the parties were able to reach an agreement on rent at the parcel shortly after." *Id.* Raskin's proposed testimony suggests that Dempsey is now unwilling to play ball at any of his properties, including Dempsey 2, which is directly at odds with the court's prior assumption. Rehearing is warranted.

The court does not reach this conclusion lightly. The court has already spilled much ink on this dispute. And, as the City points out, rehearing is a disfavored remedy. As a general rule, it is a party's responsibility to determine which evidence is persuasive and present it to the finder

---

[2] Plaintiffs had proposed lease terms of $3,000 upfront, $1,200 monthly, and a 7.5% term escalation. Dempsey responded with a demand for $4,000 per month in rent. (Order [109] at 14–15.)

of fact; a party is not entitled to reconsideration simply because their presentation of the evidence was not as persuasive as it could be. *See Quaker Alloy Casting Co. v. Gulfco Indus.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."). But rehearing is warranted in the rare circumstances where a party is unable to make an adequate presentation on an important issue, such as where the court "'has made a decision outside the adversarial issues presented to the Court by the parties.'" *Ellenby Techs., Inc. v. Fireking Sec. Grp.*, 533 F. Supp. 3d 656, 659 (N.D. Ill. 2021) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)); *see also Miller*, 683 F.3d at 813.

That is the case here. The proposed new evidence did not exist at the time of the evidentiary hearing. The proposed testimony relates to communications with Dempsey between March 31, 2025 (the date of this court's order) and July 2, 2025 (the date that judgment was entered). Dempsey's attitudes as to Dempsey 2 only came into full view after Plaintiffs began to explore the site in earnest in response to this court's order, so it was not possible for Plaintiffs to have presented this evidence at the hearing. The court is also conscious of the fact that the parties devoted little attention to the Dempsey 2 site in their post-hearing briefs; the court itself zeroed in on this potential alternative without benefit of the full adversarial process. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (finding that relief under Rule 59 was warranted when "the parties did not have sufficient indication prior to the hearing" that an issue would be relevant). It is possible that more evidence as to the feasibility of Dempsey 2 would have been developed and presented, had the parties been on notice that the issue was likely to be important to the outcome.

One additional factor informs the court's decision to grant rehearing: If the court does not consider this new evidence now, Plaintiffs may be frozen out of future judicial review. Dempsey's continued refusal to lease his property is not a decision that can be challenged under the TCA. The City's denial of a permit is subject to challenge, but only if Plaintiffs identify a consenting

8

landowner and submit a permit application. So if Dempsey is unwilling to lease Dempsey 2, Oscar Swan could very well be forever unavailable due to a court order that rests on a potentially erroneous conclusion: that a potential alternative site exists, but Plaintiffs failed to pursue it. The court believes that consideration of the new evidence is warranted to prevent this outcome. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (recognizing that Rule 59 "enables the court to correct its own errors and thus avoid unnecessary appellate procedures").

The City raises a number of objections, but none are persuasive. First, they argue that because the proposed testimony deals with "events occurring after the July 2024 trial," it is not "newly discovered evidence" under Rule 59. (Opp. [121] at 1.) In their words, "it is well-established that to be considered in connection with a Rule 59 motion, the newly discovered evidence 'must have been in existence at the time of trial.'" (*Id.* at 2 (quoting *Peacock v. Bd. of Sch. Comm'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir. 1983)).) This is mistaken—the newly discovered evidence must indeed be in existence at the time of *judgment*, but not at the time of trial.[3] *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 950 (7th Cir. 2019) (citing *Peacock*, 721 F.2d at 214) ("Newly discovered evidence must have been in existence at the time of the original judgment or pertain to facts in existence at the time of judgment."). Here, the proposed testimony relates to events that took place between the court's evidentiary hearing and the entry of judgment, and thus it was "in existence at the time of judgment." *See id.*

Next, the City argues that the proposed testimony demonstrates that Dempsey is actively engaging in negotiations, which it believes is "essentially the same status of Plaintiffs' discussions with Dempsey that Plaintiffs presented at trial." (Opp. [121] at 4.) Again, the court disagrees. The evidence tends to show that Dempsey is unwilling to lease Dempsey 2 (on terms to which he

---

[3] The parties cite to different Seventh Circuit cases. The City cites to *Peacock* (1983), which uses the word "trial" when discussing the "in existence" requirement. (Opp. [121] at 2.) Plaintiffs, on the other hand, cite to *LAJIM* (2019), which refers to "judgment." (Reply [124] at 2–3.) When the difference between the two is relevant, the court believes that "judgment" is more accurate.

9

had previously agreed) and has repeatedly failed to respond to Plaintiffs' lease proposal despite multiple attempts to prod him. It might of course be true that the new evidence will ultimately be unpersuasive, but the court declines to make a determinative finding as to the credibility of this evidence without the benefit of live testimony. The City is free to develop this argument during cross-examination at the hearing.

Finally, the City argues that the Supreme Court's recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), renders the new evidence immaterial. In prior proceedings, the parties disagreed on the relevant legal standard: Plaintiffs urged this court to adopt the FCC's interpretation of the TCA (the "materially inhibits" standard), while the City preferred the Seventh Circuit's approach ("effective prohibition"). At the time, the court understood a statute, the Hobbs Administrative Orders Review Act, to require deference to the FCC's carrier-friendly approach.[4] (Order [109] at 20–23.) *McKesson* changes this landscape, clarifying that the Hobbs Act does not require deference to the FCC's interpretations of the TCA. *See* 606 U.S. at 162 ("The Act does not purport to address, much less preclude, district court review in enforcement proceedings.") The City argues that *McKesson* requires the court to apply the "effective prohibition" test, which is more favorable to them. (Opp. [121] at 6.) Under this stricter test, the City believes it would win regardless of whether the new evidence is believed, rendering the evidence immaterial. (*Id.* at 7.)

The City may indeed be correct in its interpretation of *McKesson*, but that does not make evidence concerning Dempsey 2 irrelevant. This evidence is worthy of consideration even under the "effective prohibition" test for which the City argues. As the court has explained:

> If the court were to apply the "effective prohibition" test outlined by the Seventh Circuit in *Voice Stream*, it would be hard-pressed to conclude that Plaintiffs' evidence meets that test. In this case, (1) the carrier's investigation has revealed at least one alternate site in the municipality—Dempsey 2—where the projected cost and performance of a cell-tower appear to be equivalent to those at the denied site, but (2) the carrier has on its own removed that alternate site from the municipality's consideration by failing to submit an application. It is not clear that

---

[4] *See* 28 U.S.C. § 2342, *et seq.*

> Plaintiffs' application at Oscar Swan represented the only feasible solution to the purported coverage problem in the Randall-Lincoln area.

(Order [109] at 25.) As discussed above, because the proposed new evidence undermines this conclusion, rehearing is warranted to hear the additional evidence.

## **CONCLUSION**

Plaintiffs' Rule 59 motion for rehearing [119] is granted. The parties are directed to confer and advise the court, within 14 days, of a proposed date for a further evidentiary hearing.

ENTER:

Dated: September 29, 2025

_____
REBECCA R. PALLMEYER
United States District Judge